IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER NOEL BRALEY,

        Plaintiff,

v.                                CIVIL ACTION NO.   2:22-cv-00534

BRANDON THOMPSON, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Partial Motion to Dismiss. [ECF No. 7]. Plaintiff did not file a response in opposition, and the deadline for such response has passed. Defendants filed a reply addressing Plaintiff's lack of response. [ECF No. 11]. For the reasons discussed herein, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I.    **Background**

This action arises out of an incident occurring on or about November 24, 2020, involving the arrest and alleged "brutalization" of Plaintiff Christopher Noel Braley by law enforcement. [ECF No. 1].

According to the Complaint, "officers of the Jackson County Sheriff's Department . . . took charge of an investigation involving plaintiff wherein the person requesting assistance alleged that an intoxicated man was 'laying on the ground after

nearly striking juveniles with a vehicle.'" *Id.* ¶ 5. Plaintiff alleges that "after a lengthy and sometimes argumentative incident" with law enforcement, Defendant Brandon Thompson ("Deputy Thompson") "without provocation, used excessive force" by "viciously" striking Plaintiff in the face, "kick[ing] him in the leg," and "otherwise batter[ing]" him. *Id.* As a result of this incident, Plaintiff sustained facial injuries and a broken screw in his leg. *Id.*

Plaintiff also alleges that Deputy Thompson "was aided and abetted" by Defendant John Doe, "who filmed the encounter on his body camera but surreptitiously blocked the same with his hands or his uniform for the purpose of concealing the violence." *Id.* ¶ 6. Plaintiff further alleges that officers followed and arrested him at the instruction of their supervisor, Ross Mellinger, whom Plaintiff had opposed in the election for Jackson County Sheriff. *Id.* ¶ 7.

Following the alleged attack, Plaintiff "was arrested for various charges, all of which were ultimately dismissed." *Id.* ¶ 9. On November 22, 2022, Plaintiff filed his Complaint pursuant to this court's jurisdiction to hear claims arising under federal law. *Id.* at 1 (citing 28 U.S.C. §§ 1331, 1343). The Complaint enumerates five counts[1] against three defendants—Deputies Thompson and John Doe, and the Jackson County Commission d/b/a/ Jackson County Sheriff's Department (the "JCC"). *Id.* Mr.

---

[1] Plaintiff's causes of action are not numbered sequentially. *See* [ECF No. 1]. The first cause of action (negligence) is labeled Count IV; the second cause of action (battery) is labeled Count III; the third cause of action (IIED) is duplicatively labeled Count IV; the fourth cause of action (excessive force) is labeled Count I; and the fifth cause of action (*Monell*) is labeled Count II. *Id.* For clarity, the court identifies the causes of action by name throughout this opinion.

Braley asserts three state law claims for negligence, battery, and intentional infliction of emotional distress ("IIED"). He also asserts two federal claims under 42 U.S.C. § 1983: a claim for excessive force and a *Monell* claim against the JCC.

On January 25, 2023, Defendants Thompson and JCC filed their Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 7]. In their Motion, Defendants argue that all claims asserted against the JCC should be dismissed, and that Deputy Thompson is entitled to dismissal of the claims for negligence and IIED. Plaintiff did not file a response opposing the Motion.

## II.   Legal Standards

### A.  Standard of Review

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not include "detailed factual allegations" but must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Bare

3

"labels and conclusions" or "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

### B. Plaintiff's Failure to Respond

Defendants timely filed their Partial Motion to Dismiss on January 25, 2023. *See* [ECF Nos. 6, 7]. Under this court's Local Rules of Procedure, "[m]emoranda and other materials in response to motions shall be filed and served on opposing counsel and unrepresented parties within 14 days from the date of service of the motion." Loc. R. Civ. P. 7.1(a)(7). Accordingly, Plaintiff had until February 8, 2023, to file a response to Defendants' Motion. Because Plaintiff never responded, Defendants request that the court "deem [their] arguments as conceded or such causes of action waived or abandoned." [ECF No. 11, at 3–4].

"Where a plaintiff fails to respond to a motion to dismiss within the time period set forth by the applicable procedural rules, a court may rule on the motion to dismiss 'on the uncontroverted bases asserted therein.'" *Hager v. Star Transp., Inc.*, No. 2:11-cv-00618, 2012 WL 3139465, at *1 (S.D. W. Va. Aug. 1, 2012) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). But "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003) (citing *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000); and then citing *Vega-Encarnacion v. Babilonia*, 344 F.3d 37, 40–41 (1st

Cir. 2003)). The court therefore rejects Defendants' request to treat Plaintiff's failure to respond as a concession that their Motion should be granted.[2] I note, however, that Plaintiff's lack of response "is unhelpful and unnecessarily increases the burden on the Court." *Simpkins v. Logan Cnty. Sheriff's Dep't*, No. 2:13-cv-16613, 2014 WL 4072066, at *1 n.3 (S.D. W. Va. Aug. 14, 2014).

## III. Discussion

### A. Battery and IIED

In the second and third counts of his Complaint, Mr. Braley alleges that Deputy Thompson, aided and abetted by Defendant John Doe, committed a battery upon Plaintiff by means of "outrageous" conduct. [ECF No. 1, ¶¶ 14–18]. "As a proximate result of Defendants' actions," Plaintiff "sustained physical, mental and emotional damages." *Id.* ¶¶ 15, 18. Although not explicit, Mr. Braley presumably asserts that the JCC is vicariously liable for its employees' misconduct. *See id.* ¶ 19.

---

[2] Several federal courts have gone so far as to declare that an unopposed motion to dismiss may be properly granted without ever reaching the merits, "based on the theory that (i) plaintiff's failure to respond operates as a concession that the motion should be granted, or (ii) dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders." *Tamburo v. Hall*, No. 2:13-cv-01537, 2015 WL 1276711, at *3 n.2 (S.D. W. Va. Mar. 19, 2015) (quoting *Anderson v. Greene*, No. 05-0393, 2005 WL 1971116, at *2 (S.D. Ala. Aug. 16, 2015) (collecting cases)). But many of those courts operate under Local Rules of Civil Procedure which, unlike those governing this district, expressly specify that a party who fails to timely respond to a motion "shall be deemed not to oppose such motion." *Hanshaw v. Wells Fargo Bank, N.A.*, No. 2:11-cv-00331, 2014 WL 4063828, at *4 n.5 (S.D. W. Va. Aug. 14, 2014) (quoting M.D. Pa. Loc. R. Civ. P. 7.6). And even those courts generally recognize their retained discretion to deny an unopposed motion "plainly lacking in merit." *E.g., Pruitt v. Wells Fargo Bank, N.A.*, No. 15-1308, 2015 WL 9490234, at *3 (D. Md. Dec. 30, 2015). Moreover, the United States Court of Appeals for the Fourth Circuit has emphasized the district court's independent "obligation to review [unopposed] motions to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014); *see also Wright v. Collins*, 766 F.2d 841, 847 n.3 (4th Cir. 1985) ("[T]he norm should be to decide claims on their merits, and the mere inaction of a party or his lawyer should not result in the loss of a hypothetically meritorious claim, except in those limited instances . . . where clear notice is given in advance that a certain procedural default will or might result in loss of a claim or defense." (quoting *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1205–06 (8th Cir. 1983))).

Defendants argue that statutory immunity bars Plaintiff's claims against the JCC for battery and IIED. [ECF No. 8, at 4–5]. Under the West Virginia Tort Claims and Insurance Reform Act, political subdivisions such as the JCC are granted broad immunity "for any acts with respect to both governmental and proprietary functions unless the acts complained of come within the specific liability provisions of W. Va. Code § 29-12A-4(c)." *Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 655 S.E.2d 155, 160 (W. Va. 2007). In section 29-12A-4(c), the Act specifically enumerates certain claims of negligence for which liability may be imposed, but "claims of intentional and malicious acts are included in the general grant of immunity." *Id.* (citing W. Va. Code § 29-12A-4(b)(1)); *see also Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533 (W. Va. 1996) (dismissing civil conspiracy claim because "conspiracy is an intentional act, not a negligent one"). Because the torts of battery and IIED each require "behavior that is more than negligent," both claims must be dismissed as to Defendant JCC. *Doe v. City of Gauley Bridge*, No. 2:21-cv-00491, 2022 WL 3587827, at *11 (S.D. W. Va. Aug. 22, 2022) (citing Syl. pt. 2, *Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419 (W. Va. 1998)); *see also Helms v. Carpenter*, No. 16-1070, 2017 WL 5513618, at *7 (W. Va. Nov. 17, 2017) (holding political subdivision was immune from claims for IIED, outrage, and battery). Defendants' Motion is therefore **GRANTED** as to the battery and IIED claims against the JCC.

With respect to Deputy Thompson, Defendants do not seek dismissal of Plaintiff's battery claim, but they argue that his IIED claim "fails as a matter of law

because it is duplicative of his battery claim." [ECF No. 8, at 8]. I agree. Under West Virginia law, "[a] plaintiff may not recover damages twice for the same injury simply because he has two legal theories." Syl. pt. 7, *Harless v. First Nat'l Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982). "Because an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for [IIED] is duplicitous of a claim for assault and battery, where both claims arise from the same event." Syl. pt. 4, *Criss v. Criss*, 356 S.E.2d 620, 620 (W. Va. 1987). Consequently, "when an IIED claim arises from the same event as a battery claim, the two claims cannot simultaneously go forward." *White v. Thompson*, No. 2:21-cv-00581, 2022 WL 16815240, at *7 (citing *Criss*, 356 S.E.2d at 622). Here, Mr. Braley's IIED claim arises from the same event as his battery claim: his alleged attack by Deputy Thompson. Because the IIED claim is duplicative of the battery claim, Defendants' Motion to Dismiss is **GRANTED** as to the IIED claim against Deputy Thompson.

### B. Negligence

Mr. Braley alleges that "Defendants failed to exercise reasonable care in the hiring, retention, and/or supervision of their employees." [ECF No. 1, ¶ 12]. Throughout the Complaint, Mr. Braley does not specify which defendants are implicated by each cause of action. Because the negligence claim focuses on "hiring, retention, and/or supervision," *id.*, and because "Deputy Thompson cannot hire, retain, or supervise himself," [ECF No. 8, at 7], I construe this claim to apply only to Defendant JCC. Defendants argue that "there are no facts at all which establish a

claim that JCC negligently hired, retained, or supervised Deputy Thompson or the unknown 'John Doe.'" *Id.* at 6.

"[N]egligent hiring, negligent retention, and negligent supervision constitute three separate causes of action," *Sammons v. Wayne Cnty. Comm'n*, No. 3:21-cv-0081, 2021 WL 5417388, at *5 n.2 (S.D. W. Va. Nov. 19, 2021) (citing *C.C. v. Harrison Cnty. Bd. of Educ.*, 859 S.E.2d 762 (W. Va. 2021)), but they all center "on an employer's liability for hiring, supervising, or retaining an employee whom the employer knew, or should have known, posed a risk to third parties. The analysis focuses on whether (1) the employer (a) was on notice of the employee's propensity, (b) yet unreasonably failed to take action, and (2) a third-party was harmed from the employee's tortious conduct," *Tolliver v. City of Dunbar*, No. 2:21-cv-00011, 2021 WL 5056081, at *3 (S.D. W. Va. Nov. 2, 2021) (internal citations omitted); *cf. McCormick v. W. Va. Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998) ("[T]he inquiry upon which liability for negligent hiring or retention should be determined is: 'when the employee was hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?'" (quoting *State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997))).

Although the section of the Complaint dedicated to Plaintiff's negligence claim is threadbare, Mr. Braley does identify four specific instances in support of his contention that Deputy Thompson and other officers "had serious anger management issues or otherwise had a propensity or pattern or practice of violence." [ECF No. 1, ¶ 24 (first citing *Abels v. Thompson*, No. 2:21-cv-00594, ECF No. 1, ¶¶ 2–3 (alleging that Deputy Thompson "beat plaintiff, causing him serious bodily injuries . . . without cause"); then citing *Nutter v. Mellinger*, No. 2:19-cv-00787, ECF No. 1, ¶¶ 14, 16 (alleging that Jackson County deputies used deadly and excessive force against multiple plaintiffs without probable cause, provocation, or resistance); then citing *Fields v. Mellinger*, No. 2:19-cv-00493, ECF No. 1, ¶ 5 (alleging that Jackson County deputies "viciously struck the plaintiff in the face with the butt end of a shotgun . . . causing facial injuries and knocking out several of the plaintiff's teeth"); and then citing *White v. Thompson*, No. 2:21-cv-00581, ECF No. 1, ¶ 8 (alleging that Deputy Thompson threw plaintiff to the ground and stomped on her shoulder, breaking her clavicle)]. Plaintiff argues that the JCC failed to take appropriate action in light of these "numerous claims of excessive force." *Id.* ¶ 12. The allegations involving Deputy Thompson, of which the JCC had ample notice, satisfy the pleading requirements for a claim of negligent retention. *Cf. Rhodes v. King*, No. 2:19-cv-00626, 2020 WL 4607323, at *5 (S.D. W. Va. Aug. 11, 2020) (finding that plaintiff sufficiently pled a claim for negligent retention when alleging three specific incidents of defendant's use of excessive force and a failure to act by county sheriff).

Mr. Braley's claim for negligent hiring, on the other hand, must be dismissed. The Complaint contains no facts regarding the JCC's hiring practices or Deputy Thompson's background prior to joining the JCC. The claim therefore fails as a matter of law. *Cf. C.C.*, 859 S.E.2d at 772–78 (holding plaintiff stated a claim for negligent retention but not negligent hiring, where employee's alleged misconduct occurred only after he was hired).

The negligent supervision claim also fails, for lack of "underlying conduct of the supervised employee that is also negligent." *Id.* at 774 (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)). Unlike claims for negligent hiring and retention, a negligent supervision claim may not rest on an employee's intentional misconduct, as opposed to his negligence.[3] *Id.* At no point does the Complaint allege that the defendant Deputies negligently injured Plaintiff. To the contrary, the Complaint repeatedly characterizes Defendants' conduct as "wilful and wanton, malicious, and in blatant and intentional disregard of Plaintiff's rights." [ECF No. 1, ¶¶ 17, 22]. As pleaded, all of the Deputies' alleged wrongful conduct is intentional and therefore cannot form the basis of a negligent supervision claim. *See*

---

[3] This recent holding by the Supreme Court of Appeals of West Virginia is contentious, *see, e.g., C.C.*, 859 S.E.2d at 783–91 (Hutchison, J., concurring in part) ("strenuously dissent[ing]" to the majority's pronouncement that an employee's intentional, tortious conduct cannot support a negligent supervision claim); *id.* at 791 (Wooton, J., concurring in part) ("[A]s Justice Hutchison convincingly demonstrates, *Taylor*, 538 S.E.2d 719, simply does not establish the principle of law that the majority purports to follow."), and has not been consistently applied, *see, e.g., Fields v. King*, 576 F. Supp. 3d 392, 404 n.4, 408 (S.D. W. Va. 2021) (upholding negligent supervision claim "[f]or the same reasons Plaintiff has adequately alleged claims of negligent hiring and negligent retention," while expressly declining to determine whether any of employee's alleged conduct was negligent rather than intentional). Nevertheless, I am obligated to defer to the state's highest court on matters of state law. *See Grimmett v. Freeman*, 59 F.4th 689, 693 (4th Cir. 2023) ("[S]tate—not federal—courts have the last word about what state law means." (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938))).

*C.C.*, 859 S.E.2d at 775 (affirming dismissal of negligent supervision claim because all of employee's alleged misconduct—false imprisonment, assault, sexual harassment, and IIED—was intentional); *see also Tolliver*, 2021 WL 5056081, at *4 (upholding claims for battery, IIED, and excessive force but dismissing negligence claim because allegation that defendant's actions were "willful and wanton" clearly charged defendant with intending to violate plaintiff's rights).

Defendants' Motion is **GRANTED** as to the claims for negligent hiring and supervision, but the Motion is **DENIED** as to the claim for negligent retention.

### C. *Monell* and Supervisory Liability

Defendants also request dismissal of the claims made against the JCC pursuant to 42 U.S.C. § 1983.[4] The theory of liability set forth in *Monell* provides for a § 1983 claim against local governments when their formal policies or customs result in constitutional deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipal policy or custom may be established

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 1999) (internal markings omitted).

---

[4] Plaintiff's Complaint brings the *Monell* claim under "24 U.S.C. 1983." [ECF No. 1, at 6]. Because "24 U.S.C. 1983" is not an existing statute, the court construes the Complaint to mean 42 U.S.C. § 1983.

Mr. Braley's *Monell* claim arises out of the JCC's alleged failure "to adequately hire, train, supervise, and discipline its police officers regarding the circumstances which constitute excessive force." [ECF No. 1, ¶ 24]. As discussed with respect to Plaintiff's negligence claim, the Complaint contains no facts regarding hiring practices at the JCC. Accordingly, Mr. Braley's *Monell* claim fails insofar as it is based on the JCC's failure to adequately hire.

To bring a failure to train claim against a local government, plaintiffs must demonstrate that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). "Demonstrating a pattern of similar constitutional violations is one way for a plaintiff to show obvious need of more or different training." *Nutter*, 2020 WL 401790, at *4 (citing *City of Canton*, 489 U.S. at 390; then citing *Lytle*, 326 F.3d at 474); *see also Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987) ("[T]raining policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, and failures to adequately prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty."). Mr. Braley's allegations are sufficient to suggest a pattern of unconstitutional uses of force by Jackson County Deputy Sheriffs that would have indicated to official policymakers that there was an obvious need for better or

12

different training. At the summary judgment stage, Mr. Braley will need to identify more specifically the deficiencies in the JCC's training program, but for now he sufficiently alleges that officers received inadequate training "regarding the circumstances which constitute excessive force." [ECF No. 1, ¶ 24].

Based on those same factual allegations, Mr. Braley also adequately pleads the JCC's failure to supervise or discipline. The United States Court of Appeals for the Fourth Circuit has identified three elements in analyzing failure to supervise or discipline under *Monell*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)) (internal markings omitted). Demonstrating a "pervasive and unreasonable risk" requires evidence that the conduct is "widespread, or at least has been used on several different occasions." *Id.* In this case, Mr. Braley alleges that Jackson County Deputies used unconstitutional excessive force on several different occasions prior to the incident giving rise to this litigation, and that the JCC "knew, or should have known" of the Deputies' "pattern or practice of violence." [ECF No. 1, ¶ 24]. Mr. Braley further alleges that the JCC "adopted a policy

of paying lip-service to the Use of Force rules and not enforcing the violation of the same." *Id.* ¶ 10. According to the Complaint, these "customs, policies or official or unofficial acts" by the JCC caused the deprivation of Plaintiff's constitutional rights by the individual defendants. *Id.* ¶ 24.

At this stage of the proceedings, Plaintiff has sufficiently pleaded a plausible *Monell* claim against the JCC. Therefore, Defendants' Motion to Dismiss is **DENIED** as to the count for *Monell* and supervisory liability.

## IV.   Conclusion

For the foregoing reasons, Defendants' Partial Motion to Dismiss [ECF No. 7] is **GRANTED in part** and **DENIED in part**. The claims against the JCC for battery, IIED, and negligent hiring and supervision are **DISMISSED**. The claim against Deputy Thompson for IIED is also **DISMISSED**. Plaintiff's negligent retention and *Monell* claims against the JCC remain pending, as do the claims against Deputy Thompson for battery and excessive force.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 3, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14