IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHRISTOPHER NOEL BRALEY,

        Plaintiff,

v.                                CIVIL ACTION NO. 2:22-cv-00534

BRANDON THOMPSON, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment. [ECF No. 53]. Plaintiff responded in opposition, [ECF No. 56], and Defendants replied, [ECF No. 57]. For the reasons discussed herein, Defendants' Motion is **GRANTED.**

I.    Background

On November 22, 2022, Plaintiff, Christopher Noel Braley, filed a Complaint relating to injuries he sustained during an encounter with Jackson County police officers. [ECF No. 1]. Specifically, Plaintiff alleges that on November 24, 2020, Deputy Thompson of the Jackson County Sheriff's Department responded to a request for assistance concerning "an intoxicated man" who was "laying on the ground after nearly striking juveniles with his vehicle." *Id.* ¶ 5. Following a lengthy

interaction, it is alleged that Deputy Thompson punched Plaintiff in the face and eye and kicked him in the leg. *Id.* As a result of this incident, Plaintiff alleges that he sustained facial injuries and a broken screw in his leg. *Id.*

Plaintiff brought this action pursuant to this court's jurisdiction to hear claims arising under federal law. *Id.* at 1 (citing 28 U.S.C. §§ 1331, 1343). The Complaint asserted a total of five claims[1] against three defendants—Deputies Thompson and John Doe, and the Jackson County Commission d/b/a Jackson County Sheriff's Department (the "JCC"). *Id.* Plaintiff asserted three state law claims for negligence, battery, and intentional infliction of emotional distress ("IIED") as well as two federal claims under 42 U.S.C. § 1983: a claim for excessive force and a *Monell* claim for liability against the JCC.

On March 3, 2023, I granted in part and denied in part Defendants' Partial Motion to Dismiss. [ECF No. 21]. In doing so, I dismissed the claims against the JCC for IIED, negligent hiring, and negligent supervision, as well as the IIED claim against Defendant Thompson. *Id.* at 14. Still pending are Plaintiff's claims for negligent retention and *Monell* liability as to the JCC, and the claims against Defendant Thompson for battery and excessive force. *Id.*

---

[1] The causes of action in Plaintiff's Complaint are not sequentially numbered. *See* [ECF No. 1]. The first count (negligence) is labeled Count IV; the second count (battery) is labeled Count III; the third count ("Outrageous Conduct/Intentional Infliction") is strangely also labeled Count IV; the fourth count (excessive force) is labeled Count 1; and the fifth count (*Monell*) is labeled Count II. *Id.* For the sake of clarity, and consistency with my prior opinion at the motion to dismiss stage, I refer to each count by name throughout this opinion.

2

On April 8, 2024, Defendants timely filed their Motion for Summary Judgment. [ECF No. 53]. Plaintiff filed his Response on April 22, 2024, [ECF No. 56], and Defendants replied on April 29, 2024, [ECF No. 57]. The motion is ripe for review.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).

The moving party may meet its burden of showing that no genuine issue of material fact exists through the use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### III. Discussion

#### A. *Claims Against Defendant Thompson*

The court will first consider Plaintiff's federal claim of excessive force brought pursuant to 42 U.S.C. § 1983 and then turn to his state law battery claim.

1. Excessive Force

The doctrine of qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The determination of whether a state official receives the benefit of qualified immunity is a two-step process. Viewing the facts in the light most favorable to the plaintiff, the court must decide (1) whether there was a constitutional violation, and (2) whether the right violated was clearly established at the time of the violation. *Id.* at 232. If the answer to either question is no, then the defendant is entitled to qualified immunity. Whether a right is clearly established is a question of law, while a genuine question of material fact regarding whether the allegedly violative conduct actually occurred "must be reserved for trial." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). A right is clearly established if "every 'reasonable official would [understand] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is clearly established that the Fourth Amendment confers upon individuals a constitutional right to be free from excessive force during the course of an arrest." *Weigle v. Pifer*, 139 F. Supp. 3d 760, 769 (S.D. W. Va. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Excessive force occurs when an officer uses more force than is objectively reasonable in the situation. *Graham*, 490 U.S. at 397. To determine whether the use of force was objectively reasonable, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Id.* at 396 (quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968)). This inquiry is fact specific and requires courts to analyze factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The seriousness of the plaintiff's injuries is also relevant. *See Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994). Here, whether or not qualified immunity shields Deputy Thompson from § 1983 liability depends upon whether the force employed against Plaintiff was excessive.

Plaintiff claims during the course of his interaction with the Jackson County police officers, Deputy Thompson "sucker punched" him in the face when he was standing approximately 25 feet away from his vehicle. [ECF No. 53-2, at 44–45]. He further alleges that the punch knocked him off of his feet and that multiple officers piled on top of him, proceeding to beat and kick him. *Id.* at 22–25. Plaintiff also

5

claims that Deputy Thompson kicked him in his left leg, breaking surgical screws from a prior injury. *Id.* at 21–23. Despite these allegations, Plaintiff provides no evidence in support of his claims. At the summary judgment stage, a plaintiff must show more than bold assertions contained in pleadings that he was harmed. Here, Plaintiff provides no medical documentation of the alleged injuries he sustained. In fact, his claims of injuries are directly contradicted by the video evidence provided by Defendants. [ECF Nos. 53-3–53-8]. The body camera footage capture during the interaction does not show excessive force, [ECF Nos. 53-3–53-6], and footage captured immediately after the interaction as well two days later shows Plaintiff was not suffering from the injuries he describes, [ECF Nos. 53-7–53-8].

In support of the Motion for Summary Judgment, Defendants submitted several videos of Plaintiff's interaction with the Jackson County police officers on November 24, 2020. [ECF Nos. 53-3–53-8]. The video captured on Lieutenant Roberts' body camera begins with the officers conducting a DUI investigation and shows Plaintiff to be visibly intoxicated, staggering and slurring his words, and his vehicle to be severely damaged. [ECF No. 53-4]. Plaintiff is administered a breathalyzer test and fails the test by blowing a 0.129. *Id.* at 2:00–2:35. The video captured on Deputy Williams' body camera begins just after Plaintiff failed the breathalyzer test. [ECF No. 53-5]. In the video, Plaintiff is shown walking around the vehicle, getting progressively more agitated. *Id.* at 4:00–5:20. He repeatedly states that he has a pistol in the vehicle. *Id.* at 2:55, 5:20. Deputy Thompson asks

6

Plaintiff if he is looking for something and if he had lost his cell phone. [ECF No. 53-4, at 6:00–6:15]. Plaintiff states again that he is looking for his pistol. *Id.*

Deputy Thompson then attempts to redirect Plaintiff away from the interior of the vehicle. [ECF No. 53-5, at 5:25]. At this point Plaintiff can be seen standing directly next to the open driver's side door of the vehicle, rather than 25 feet away from the vehicle as he testified during his deposition. *Id.* at 5:25; [ECF No. 53-2, at 44–45]. Plaintiff then suddenly turns towards Deputy Thompson and the interior of the vehicle—where he has already indicated his pistol is located. [ECF No. 53-5, at 5:25]. Deputy Thompson attempts to perform a leg sweep on Plaintiff and a struggle ensues during which Plaintiff is taken to the ground and placed in handcuffs. [ECF No. 53-4, at 8:20–8:45]; [ECF No. 53-5, at 5:40–6:10].

Here, the force applied by Deputy Thompson was not excessive because it was "objectively reasonable in light of the facts and circumstances confronting [him]" at the time. *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal citation omitted). While Plaintiff claims he was beaten by Deputy Thompson and the other officers on the scene, the video evidence submitted by Defendants blatantly contradicts that story. As such, I am not required to adopt Plaintiff's version of the events in my consideration of his claim. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

7

not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

As previously noted, to determine whether an officer has acted reasonably, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Considering these factors, Deputy Thompson acted reasonably because "other officers, armed with the same information . . . would have perceived [Plaintiff] as a threat to the officer's safety." *Benton v. Layton*, 675 F. Supp. 3d 606, 616 (E.D. Va. 2023).

As to the first factor, Plaintiff was under investigation for driving under the influence and nearly hitting several minors with his vehicle. This is a serious offense under *Graham*. *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016). With respect to the second factor, a reasonable officer would have perceived Plaintiff to be an "immediate threat to the safety of the officers and others." *Graham*, 490 U.S. at 396. Despite attempts to redirect Plaintiff from his vehicle, Plaintiff grew irate and remained intent on locating his pistol. Under these facts, a reasonable officer would perceive Plaintiff as posing an immediate threat to his safety. *See. Jones v. Buchanan*, 325 F.3d 530, 529 (4th Cir. 2003). Finally, Plaintiff refused to move away from his vehicle and, once he was on the ground, resisted attempts to place

him in handcuffs. A reasonable officer would perceive these actions as those of an individual resisting arrest.

Based on the foregoing analysis of the *Graham* factors, I conclude that Deputy Thompson's use of force was objectively reasonable in light of the totality of the circumstances in this case. Thus, Deputy Thompson did not apply excessive force against Plaintiff in violation of his constitutional rights. As such, Deputy Thompson is entitled to summary judgment as to the excessive force claim under 42 U.S.C. § 1983.

>   2. Battery

The Supreme Court of Appeals of West Virginia has adopted the definition of battery stated in the Restatement (Second) of Torts, which provides:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*McKenzie v. Sevier*, 854 S.E.2d 236, 245 (W. Va. 2020) (quoting Restatement (Second) of Torts §§ 13(a)–(b) (Am. Law Inst. 1979)). A defendant can avoid liability for battery if he is privileged to engage in the complained of conduct. *Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010). The use of force by police officers is not privileged if the force applied exceeds what a reasonable officer would find necessary. *See id*; Restatement (Second) of Torts § 132 ("The use of force against another for the purpose of effecting the arrest or recapture of the other, or of

9

maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.").

Furthermore, under West Virginia law, an employee of a political subdivision is immune from liability unless: "(1) [the employee's] acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [the employee's] acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of" West Virginia law. W. Va. Code § 29-12A-5(b). The West Virginia Supreme Court of Appeals has explained that West Virginia's "approach to matters concerning immunity historically has followed federal law." *City of St. Albans v. Botkins*, 719 S.E.2d 863, 868 (W. Va. 2011). It logically follows that much of the same analysis applicable to Deputy Thompson's invocation of qualified immunity against Plaintiff's § 1983 claim applies with equal force to his invocation of statutory immunity against his state law claim.

Here, Deputy Thompson was privileged to use the reasonable force he applied to Plaintiff to prevent harm to himself and others. Additionally, none of the exceptions from statutory immunity apply. Deputy Thompson was acting within the scope of his employment when he took Plaintiff to the ground to gain control of him. Also, the video evidence demonstrates that Deputy Thompson's conduct was not undertaken "with malicious purpose, in bad faith, or in a wanton or reckless manner," but rather to maintain order

10

and security. *See* [ECF Nos. 53-4–53-5]. Finally, the court is unaware of, and Plaintiff has not raised, any provision of state law that expressly imposes liability on Deputy Thompson. Accordingly, Deputy Thompson is entitled to summary judgment on Plaintiff's battery claim.

### B. Claims Against the JCC

#### 1. Negligent Retention

Plaintiff alleges that the JCC negligently retained Deputy Thompson because Deputy Thompson has had "numerous claims of excessive force against [him]." [ECF No. 1, ¶ 12].

A negligent retention claim seeks to impose liability on an employer who retains an employee "whom the employer knew, or should have known, posed a risk to third parties." *Tolliver v. City of Dunbar*, No. 2:21-cv-111, 2021 WL 5056081, at *3 (S.D. W. Va. Nov. 2, 2021) (internal citations omitted). The central inquiry in a negligent hiring or retention claim is:

> When the employee is hired or retained, did the employer conduct a reasonable investigation into the employee's background vis a vis the job for which the employee was hired and the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee? Should the employer have reasonably foreseen the risk caused by hiring or retaining an unfit person?

*State ex. rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 289 n.7 (W. Va. 1997).

Defendants argue that Plaintiff has provided "no evidence that Deputy Thompson was unfit for work as a police officer." [ECF No. 54, at 19]. Defendants

11

concede that Deputy Thompson has been previously involved in two other lawsuits but emphasize that he has never been found to have violated an individual's "civil rights." *Id.* As such, Defendants wager that the JCC never had any reason to discipline Deputy Thompson or reconsider his fitness as an officer. *Id.*

Plaintiff makes no response to Defendants' arguments that the JCC be granted summary judgment as to the negligent retention claim. *See generally* [ECF No. 56 (illustrating that Plaintiff does not address the negligent retention claim in his response to the motion for summary judgment)]. "The failure to respond to arguments raised in a motion for summary judgment can indicate that the non-moving party concedes the point or abandons the claim." *Blankenship v. Necco, LLC*, 2:16-cv-12082, 2018 WL 381092, at *9 (S.D. W. Va. Jul. 25, 2018). Because of Plaintiff's failure to respond, as well as the complete lack of evidence that Plaintiff has put forth to show that the JCC should have been aware of any risk caused by retaining Deputy Thompson, the JCC is entitled is entitled to summary judgment on the negligent retention claim.

    2. *Monell* Liability

Plaintiff also brings suit against the JCC for municipal liability under 42 U.S.C. § 1983, arguing that Plaintiff's Fourth Amendment rights were violated as a result of the JCC's failure to adequately train, supervise, and discipline its officers "regarding the circumstances which constitute excessive force." [ECF No. 1, ¶ 24]. Municipalities may be sued under § 1983 for policies which result in constitutional

harms. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To succeed on a claim for *Monell* liability, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). A municipal policy or custom may be established

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 1999) (internal markings omitted).

To succeed on a failure to train claim against a local government, a plaintiff must establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Plaintiffs can demonstrate the obvious need for "more or different training" by showing a "pattern of similar constitutional violations." *Nutter v. Mellinger*, No. 2:19-cv-493, 2020 WL 401790, at *4 (S.D. W. Va. Jan. 23, 2020) (internal citations omitted). Here, Plaintiff fails to provide any evidence of such a pattern in Jackson County.

The United States Court of Appeals for the Fourth Circuit has outlined three elements of a successful failure to supervise or discipline case under *Monell*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiffs; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1999)) (internal markings omitted). To show a "pervasive and unreasonable risk," a plaintiff must put forth evidence that the complained of conduct is "widespread, or at least has been used on several different occasions." *Id.* Here, Plaintiff provides no evidence of such a risk. In fact, similar to his treatment of his claim for negligent retention, Plaintiff failed to respond to Defendants' arguments regarding *Monell* liability at all in his response. *See generally* [ECF No. 56]. As Plaintiff failed to respond to Defendants' arguments and has, likewise, provided no evidence to support any theory of *Monell* liability, the JCC is entitled to summary judgment on the *Monell* liability claim.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment, [ECF No. 53], is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 11, 2024

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE